[S. F. No. 25. Department Two.—September 18, 1896.]

JOHN KROHN, RESPONDENT, v. MILTON LAMBETH, APPELLANT.

VENDOR AND PURCHASER — PURCHASE OF MINE BY PROMOTER OF CORPORATION —ADVANCE OF PURCHASE MONEY BY THIRD PARTY—PROMISSORY NOTE— AGENCY — UNDISCLOSED PRINCIPAL. — Where a mine which had been bonded to others, was, with their consent, purchased in his own name by a broker engaged in buying and selling mines, who took a deed to himself, paying part of the purchase money, which was advanced to him by a third party, and gave his individual note to the vendor for the remainder of the purchase money, the purchase having been made under an agreement between the parties that a corporation should be formed to work the mine, that such third party should hold the majority of the stock, and should be repaid for his advances with interest out of the profits of the mine, and that the holder of the original bond and the purchaser of the mine were each to receive a certain share of the stock, such purchase of the mine was made by the broker as a principal, and as promoter of the corporation, and not as an agent for the party advancing the money, and such party is not liable on the note as an undisclosed principal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. JOHN HUNT, Judge.

The facts are stated in the opinion of the court.

*Naphtaly, Freidenrich & Ackerman,* for Appellant.

*George A. Rankin,* for Respondent.

THE COURT.—This action was brought by the plaintiff to recover from the defendant the sum of $800, the balance of the purchase price of certain mines, said sum being the amount of a promissory note executed to the plaintiff by one J. Murray Bailey, in his own name, it being alleged by plaintiff that in making said purchase and executing said note, Bailey in fact acted as agent for the defendant, though plaintiff then and for a long time thereafter supposed and believed that he was acting in his own behalf. The jury returned a verdict for the plaintiff, upon which judgment was entered, and this appeal is from the judgment, and from an order denying defendant's motion for a new trial.

The only point made by appellant for reversal is that the verdict is not sustained by the evidence.

Plaintiff was the owner of certain mines, and had given a bond to Holcombe & Beale to sell and convey said mines to them at a price therein named for the purpose of enabling them to sell the property. Bailey was a broker engaged in buying and selling mines, and Holcombe & Beale called his attention to the property, and exhibited to him specimens of the ore, which he had tested and found valuable. Lambeth, the defendant, was a mining man of considerable means, and Bailey, who was without means and unable to purchase on his own account, called the attention of Lambeth to the property and showed him the samples of the ore. Bailey testified that he proposed to Lambeth that when the property was secured he would form a corporation and would give Lambeth the control, " if he would put up the money and purchase the mine, provided he approved of it when he examined it"; that Lambeth said he would let him know, and the next day informed him that he was " ready to go in that mine." The understanding in relation to the interest each was to have in the stock of the corporation was that Lambeth should have 110,000 shares out of the 200,000 which was to represent the capital of the corporation, and Bailey was to have 90,000, out of which he was to provide

for Holcombe & Beale, who held a bond on the mines. On June 11, 1891, Lambeth, Holcombe, and Bailey visited the mines, and spent two days in examining them, and Lambeth said (as Bailey testified): "Bailey, I will put up $12,000 for this property; that is all the money I have loose, and I will put up no more. I will give $5,000 for the title, and the remaining $7,000 shall go to repairing the mill, and for the development of the property."

The price named in the bond held by Holcombe & Beale was $22,500, and Bailey agreed to give them 40,000 shares out of his 90,000, they to permit the purchase to be made direct from the owner.

Lambeth desired Bailey to put the proposition that he would give but $5000 for the title in writing, when Bailey suggested that that was " a big come-down from $22,500, and that he might not be able to get it for that." Mr. Krohn, the owner, had not been seen at that time. Lambeth then said: " I will go as high as two thousand or three thousand dollars more than five thousand dollars cash, if you have to do it to get the property, but if you have to pay more than $5000 cash and go as high as two thousand or three thousand dollars more, you take it on a long-time note of two or three years." Bailey then wrote and Lambeth signed the following:

"WATERLOO MINE, June 13, 1891.
" *To J. Murray Bailey,*

" DEAR SIR: I will advance $12,000; $5,000 to pay for the property and $7,000 to be expended in repairing the mill and opening of mine. All money advanced by me to draw ten per cent per annum until paid out of the profits of the mine, either by working or sale of mine. The property to be incorporated; capital stock, 200,000 shares; I to receive 110,000 shares. In regard to negotiating with Mr. Krohn, you can go as high as $3,000 over the $5,000 cash, if you have to do it as a last resort, but should get two or three years' time.

" (Signed)    M. LAMBETH."

Lambeth then proposed to return to the city of San Francisco, where both he and Bailey resided.

Bailey felt doubtful about getting the property for $5,000, and suggested to Lambeth that he had better go and try it, but Lambeth replied that as he was known to be a man of wealth the parties would jump it up on him, or something to that effect, and at once returned to the city. Krohn lived some five miles from the mines and had not been seen. Bailey then gave Holcombe a written agreement to give him, for himself and Beale, 40,000 shares of the stock, when issued, for their interest under the bond, and they gave written authority to Krohn to deal with Bailey regardless of the bond.

Bailey then visited the plaintiff, who asked $10,000, but finally agreed to take $6,000, $5,200 in cash and a note for $800, payable in fifeeen months and fifteen days without interest.

Bailey executed the note, and plaintiff executed a deed for the property to Bailey as grantee, and these instruments were placed in escrow. Bailey did not disclose Lambeth's connection with these transactions, nor did plaintiff know that anyone save Bailey himself was interested as purchaser.

Upon Bailey's return to the city, Lambeth was fully informed of the transaction and made no objection thereto. He deposited $12,000 to the credit of Bailey, out of which Bailey paid $5,200 to the bank, which held the deed and Bailey's note in escrow, and the bank delivered the cash and the note to the plaintiff, and the deed to Bailey. Bailey went to the mine and took personal charge thereof; the corporation was formed and the stock issued and distributed according to the arrangement hereinbefore stated. Bailey testified that he executed said note in his own name because he had no authority to sign Lambeth's name, and because of Lambeth's suggestion that, if he were known in the transaction, the price might be raised.

The verdict was returned and the judgment entered upon the theory that the evidence showed that Lambeth

was an undisclosed principal in the purchase of the mine, acting through his agent Bailey. We are of the opinion that no such interpretation can reasonably be put upon the evidence. Lambeth was not the purchaser of the property. Lambeth was not to receive from Bailey a deed to the property, or to any part thereof. Bailey was a "promoter," desirous of securing the ownership and control of the mine. He was without financial means to do so himself. He interested Lambeth in the proposition, and agreed with Lambeth that if he, Lambeth, would advance to him, Bailey, money wherewith Bailey might purchase the mine, Bailey in turn would organize a corporation, convey certain shares of stock to others for their interest in the property, would retain a certain amount for himself, and would make over to Lambeth 110,000 shares. The money which Lambeth advanced, or in effect lent, to Bailey, was not even to be repaid in the form of stock. He was, under his agreement, still entitled to a return of every dollar of it out of a designated fund, the profits of the mine. If Lambeth had said to Bailey that he would advance him $12,000 for the indicated purposes, without taking any interest in the corporation, and that Bailey was to repay this money out of the profits of the mine, it would not be contended for an instant that Lambeth was any more an undisclosed principal than would have been any other person from whom Bailey might have secured the desired loan. But the circumstance that Lambeth is to receive shares of stock in the corporation to be formed does not alter his position under the agreement. Bailey is still the principal in the transaction with plaintiff. It devolved upon Bailey to purchase the property, not for Lambeth, but as a part of his agreement to secure the mine, organize the corporation, and convey to it the property. Lambeth's promises of money enabled him to do what otherwise he would have been unable to accomplish. For Lambeth's failure to make good those promises Bailey might have had his cause of action against Lambeth, but as between plaintiff and Lambeth

there was no privity.    Bailey was not alone acting as principal, but in fact was the principal.

The judgment and order are reversed, and the cause remanded.